2013 JUN 17 AM 8:58
COURT OF APPEALS DIV I

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | DIVISION ONE |
| ) | |
| Respondent, ) | No. 68137-1-I |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| JEFFREY STUART BEASLEY, ) | |
| ) | |
| Appellant. ) | FILED: June 17, 2013 |
| _____ ) | |

DWYER, J. — Following a jury trial in King County Superior Court, Jeffrey Beasley was convicted of assault in the fourth degree, five counts of felony violation of a no-contact order, and tampering with a witness. Beasley appeals from his conviction of witness tampering, contending that there was insufficient evidence to support this conviction. Because a rational trier of fact could have found the elements of witness tampering beyond a reasonable doubt, we disagree. Accordingly, we affirm.

I

Danitra Powell moved in with her boyfriend, Beasley, in October 2010. On June 20, 2011, Powell came home from school and discovered that Beasley was searching through her belongings because he was suspicious that she had been unfaithful to him. Beasley and Powell subsequently engaged in a verbal quarrel, after which Beasley became physically violent with Powell. Throughout the

remainder of the evening and early morning, he grabbed, pushed, pinched, choked, and bit her. This altercation lasted until Powell and Beasley fell asleep, at approximately 6:00 a.m. the following morning.

When Beasley and Powell woke up later that evening, on June 21, 2010, Beasley began to search Powell's cellular phone. Fearful that Beasley would become angry again, Powell removed the screen to the bedroom window, exited the house through the window, and fled to a neighbor's residence. She used her neighbor's telephone to place one call to her mother and another call to 911. The police arrived shortly thereafter and documented numerous injuries on Powell's body, which included bruises, abrasions, bite marks, and red marks. A police officer received a signed, written statement from Powell that described the events that had transpired.

Powell stayed with her mother for one week, after which she moved back in with Beasley. During that week, Beasley contacted Powell several times by e-mail, and Powell visited Beasley at his house at least twice. On July 1, 2011, after Powell returned to live with Beasley, the State filed an information charging Beasley with one count of assault in the second degree and one count of felony harassment.

On July 11, 2011, Powell met with a detective to recant the written statement that she had previously provided. She fabricated a new story in which she claimed that her injuries were the result of a fight with another woman. She later testified that she presented this false account at Beasley's behest. He told her that if she did not change her statement, he would be in jail for a long time.

Powell testified that she chose to comply with Beasley's request because she felt sorry for him.

On July 12, 2011, Beasley was arrested, arraigned, and taken into custody. A no-contact order was also issued, which prohibited Beasley from contacting Powell, including by telephone.

Between July 19 and July 31, 2011, while in jail awaiting trial, Beasley placed a series of telephone calls to his niece, Jennifer Beasley, who thereafter connected the calls to Powell. These calls were recorded by the facility in which Beasley was incarcerated. Pertinent excerpts from the telephone conversations are as follows:[1]

[BEASLEY]: Then he's talking about it going on trial, talking about um well it's hard to beat these cases, especially if she gets on the stand . . . once she gets on the stand. I said well she's not, you know what I'm saying, I don't even think she's gonna be there, man.

[POWELL]: Uh-huh.

[BEASLEY]: I was like look in order for her to get there she has to get a subpoena. If she doesn't get the subpoena . . . they can only issue 'em a material witness warrant for 72 hours.

[POWELL]: Uh-huh.

[BEASLEY]: You know what I'm saying. If she went out of town, like California, they don't even extradite back.

[POWELL]: Yeah.

[BEASLEY]: You know what I'm saying for, for a material witness warrant. . . .

[BEASLEY]: I don't know what's gonna go on, but I just hope she's careful. If she's not gonna show up I hope she's careful. Are you sure she's not showing up?

[JENNIFER]: Naw.

[BEASLEY]: Huh?

---

[1] At trial, six of these recorded jail telephone calls were offered, admitted, and played to the jury. The jury was also provided a transcript of the calls as a listening aid.

[JENNIFER]: Naw I ain't see her.
[BEASLEY]: Are you, are you guys sure that she's not showing up at the court?
[POWELL]: Yep. . . .

[BEASLEY]: [B]ecause if she don't want to come all she has to do is not answer her subpoena. And then at the same time when they put the material witness warrant out all she has to do is not answer or take a trip to Cali or go to the uh drunk boxer's parents house. Huh? For a few days. Huh?
[POWELL]: Uh-huh.
[BEASLEY]: Goodness sakes it's too easy. You know what I'm saying. . . .

[BEASLEY]: [Y]ou cannot . . . basically uh you have the right to face your accuser meaning that if your accuser does not show up there is no case. They have to dismiss, without an accuser there is not witness, there is no. . .
[POWELL]: Okay. Okay and that's fine. This . . .and I'm gonna tell you like this. Remember that you said that because she had no intention of ever . . . she doesn't have any intention on going up to the fucking court anymore.

Based upon the content of these recorded telephone conversations, the State amended the information against Beasley to include a charge of tampering with a witness in violation of RCW 9A.72.120, and five counts of felony violation of the no-contact order.

Following trial, the jury returned guilty verdicts as to the crime of tampering with a witness and as to the lesser crime of assault in the fourth degree. The jury also found Beasley guilty as to the five counts of felony violation of a court order. The trial court thereafter imposed a concurrent sentence of 60 months incarceration for his convictions of tampering with a witness and violation of the no-contact order, and a consecutive misdemeanor sentence of 180 days of

incarceration for the assault conviction.

Beasley appeals.

II

Beasley asserts that his witness tampering conviction should be reversed and dismissed with prejudice. This is so, he argues, because insufficient evidence supported this conviction. We disagree.[2]

On a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The elements of a crime may be established by direct or circumstantial evidence, one being no more or less valuable than the other. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency of the evidence admits the truth of the State's evidence and all inferences that can be drawn therefrom. Salinas, 119 Wn.2d at 201.

To convict Beasley of tampering with a witness, the applicable jury instruction required that the State prove the following elements beyond a

---

[2] In his statement of additional grounds, Beasley asserts multiple additional contentions, including (1) that his conviction for assault in the fourth degree should be reversed because, he asserts, Powell made several inconsistent statements before and during trial, (2) that his five counts of felony violation of a no-contact order should be reversed, and (3) that the prosecutors impermissibly used intimidation tactics against him. After a thorough review of the record, we determine that Beasley's contentions warrant neither appellate relief nor further discussion.

reasonable doubt:

> (1) That during a period of time intervening between July 7, 2011, through July 31, 2011, the defendant attempted to induce a person to testify falsely or, without right or privilege to do so, withhold any testimony or absent himself or herself from any official proceeding; and
> (2) That the other person was a witness; and
> (3) That the acts occurred in the State of Washington.

Beasley challenges the sufficiency of the evidence based upon his assertion that the State failed to prove beyond a reasonable doubt that he tampered with a witness. In so contending, Beasley points to the language set forth in RCW 9A.72.120,[3] which requires the State to establish that a defendant "attempt[ed] to induce" a witness to testify falsely, absent herself from trial, or withhold testimony. Beasley asserts that the "attempts to induce" element was not satisfied because the evidence demonstrated that Powell "needed no persuasion to change her statements." This contention lacks merit.

In asserting that Powell "needed no persuasion" to change her statement, Beasley mischaracterizes and ignores the clear language of RCW 9A.72.120. According to Beasley's contention, the statute required the State to prove that Beasley did, in fact, persuade Powell to change her statement. This is not so. The statute's plain language indicates that a conviction of witness tampering

---

[3] RCW 9A.72.120 provides, in relevant part:
A person is guilty of tampering with a witness if he or she attempts to induce a witness . . . to:
    (a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
    (b) Absent himself or herself from such proceedings; or
    (c) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.

requires proof that the defendant made an *attempt* to induce a witness to absent herself from the proceeding, testify falsely, or withhold testimony. RCW 9A.72.120. Thus, whether Powell was independently motivated to change her statement or absent herself from Beasley's trial is of no moment. Nor is it significant whether Beasley succeeded in his attempt to procure Powell's unavailability during his trial. The gravamen of the offense is his attempt to induce or bring about the referenced results.

Furthermore, sufficient evidence was presented at trial such that a rational trier of fact could reasonably conclude that the "attempts to induce" requirement was met. First, the content of the jail telephone calls could lead a reasonable juror to conclude that Beasley attempted to dissuade Powell from appearing at his trial. Beasley's statements made in the telephone calls demonstrate that he was instructing Powell to travel to California during his trial in order to avoid testifying. A fact finder could also reasonably infer that Beasley was telling Powell that she could ignore the State's subpoena if she so desired. Indeed, Beasley concedes in his briefing that "[i]n those calls, Beasley asked Powell not to appear in court."

Moreover, in addition to the telephone calls that were played to the jury, Beasley's testimony at trial provided further evidence that could lead to a reasonable inference that he was attempting to discourage Powell from testifying. At trial, Beasley testified that, in these jail telephone calls, he was informing Powell that she could choose whether to testify or not, and that if she wished not to do so, she could ignore the State's subpoena. Beasley also admitted in his

testimony that, in these telephone calls, he was notifying Powell that if she went to California during his trial, she would not be extradited, and that she could not be forced to testify. Finally, he testified that it was important to him that Powell not appear at his trial.

Viewing the evidence in the light most favorable to the State, a rational juror could reasonably infer that Beasley was attempting to induce Powell to withhold evidence, testify falsely, or absent herself from his trial. Accordingly, the evidence was sufficient to support the jury's verdict.

Affirmed.

We concur:

- 8 -