IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32958-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRANDON CASEY PRIES, also known | ) | |
| as BRANDOND C. PRIES, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Brandon Pries was convicted of failure to register as a sex offender

following a bench trial. He also pleaded guilty to escape from community custody. Mr.

Pries appeals, arguing (1) insufficient evidence supports his conviction for failure to

register as a sex offender, and (2) the trial court abused its discretion when it ordered him

to submit to another collection of his deoxyribonucleic acid (DNA). We find no error and

affirm.

FACTS

In August, 2013, Mr. Pries was released from prison, subject to sex offender

registration requirements and Department of Corrections (DOC) supervision. With the help of a housing allowance from the DOC, Mr. Pries moved into the New Washington Apartments in Spokane. Mr. Pries was aware that any violation of his community custody conditions would result in termination of his housing allowance.

Mr. Pries initially complied with his registration and community custody obligations. However, things soon changed. On September 11, 2013, Mr. Pries failed to report to his community corrections officer. Around the same time, the DOC lost track of Mr. Pries, as he stopped charging his GPS (global positioning system) monitoring bracelet and then cut the bracelet from his ankle. On September 12, 2013, a DOC warrant was issued for Mr. Pries's arrest. Mr. Pries's housing allowance was terminated; however, DOC had already paid September's rent. It is unclear whether the DOC paid October's rent. In any event, the New Washington Apartments took no eviction action against Mr. Pries.

From mid-September forward, Mr. Pries and his then-fiancé, Mary Blair, actively avoided the DOC. At trial, Ms. Blair testified she and Mr. Pries left Spokane for Chewelah, Washington, in October 2013 because Mr. Pries knew the police were looking for him. Mr. Pries testified to the same, clarifying that the pair left Spokane on October 8, 2013. Mr. Pries and Ms. Blair stayed in Chewelah for two to three weeks at

the home of Mr. Pries's uncle. During this time period, Ms. Blair testified she and Mr. Pries were effectively homeless. Mr. Pries and Ms. Blair ultimately left Chewelah and returned to Spokane because Mr. Pries's uncle found out Mr. Pries was wanted by the police. Ms. Blair testified she and Mr. Pries would have stayed in Chewelah had Mr. Pries's uncle not asked them to leave.

Mr. Pries and Ms. Blair arrived back in Spokane on October 19, 2013. Mr. Pries was located by law enforcement late that night at Freeway Park. According to Ms. Blair, she and Mr. Pries had intended to sleep at Freeway Park that night.

Mr. Pries was subsequently charged with failing to register as a sex offender during the period from October 3 through October 15, 2013. He was also charged with escape from community custody. Mr. Pries pleaded guilty to escape but proceeded to a bench trial on the failure to register allegation. The trial court found Mr. Pries guilty and entered written findings of fact and conclusions of law. The judgment and sentences for both Mr. Pries's convictions contain a DNA collection requirement. This requirement was set forth pursuant to standard state forms, explaining that no DNA need be collected "if it is established that the Washington State Patrol crime laboratory already has a sample from [Mr. Pries] for a qualifying offense." Clerk's Papers at 246, 288.

Mr. Pries has filed this timely appeal.

3

## ANALYSIS

### A.    Sufficiency of the Evidence

In Washington, a person required to register as a sex offender must regularly register his or her whereabouts with the county sheriff. RCW 9A.44.130. A change in residence must be reported within three business days. RCW 9A.44.130(5). The three day rule also applies to someone who no longer retains a fixed residence and becomes homeless. RCW 9A.44.130(5)(a). A residence "is the place where a person lives as either a temporary or permanent dwelling, a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999). To obtain a conviction for failure to register, the State must prove beyond a reasonable doubt the defendant knowingly failed to comply with his or her statutory registration requirements. RCW 9A.44.132(1).

Mr. Pries's argument is the State failed to present sufficient evidence that he knowingly changed residences. The test for sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *State v. Gentry*, 125 Wn.2d 570, 596-97, 888 P.2d 1105 (1995). All reasonable inferences from the evidence are drawn in the State's favor and "interpreted most strongly against the

4

defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). This court defers to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Emery*, 161 Wn. App. 172, 199, 253 P.3d 413 (2011).

Contrary to Mr. Pries's position, this case is not similar to *State v. Drake*, 149 Wn. App. 88, 201 P.3d 1093 (2009), where the State lacked evidence of intent to change residences. In *Drake*, the defendant had gone missing for two weeks. The only proof of intent to change residences was testimony from the defendant's apartment manager indicating the defendant had not paid rent and, therefore, his tenancy was considered terminated. The manager also testified the defendant's belongings had been packed up and stored. No evidence was presented with respect to the defendant's whereabouts during his two week absence. Nor was there any evidence the defendant had been notified of his purported eviction. Under these circumstances, the State could not prove the defendant did not intend to return to his apartment, as required to prove a change in residency.

Here, the proof was much stronger. Unlike *Drake*, the trial court here had evidence regarding Mr. Pries's whereabouts during the time period in question. Significantly, the trial court had the benefit of testimony from Mr. Pries's former fiancé,

5

Ms. Blair. Ms. Blair explained she and Mr. Pries intended to stay in Chewelah and would have done so had they not been instructed to leave. The trial court was entitled to find this credible. Ms. Blair's testimony, coupled with the undisputed evidence that Mr. Pries was purposefully fleeing from an arrest warrant, provided ample proof that Mr. Pries intended to abandon his residence at the New Washington Apartments and reside elsewhere. Accordingly, we will not disturb the trial court's finding of guilt.

## B. The DNA Collection Requirement

Mr. Pries argues the trial court erred when it ordered him to submit to a collection of his DNA. According to Mr. Pries, the order was improper because a DNA sample had already been ordered as part of a previous felony sentence. We find no error.

The judgment and sentence forms signed by the trial court specified a DNA sample need not be collected if a sample was already in the possession of the Washington State Patrol crime laboratory. This is consistent with Washington law. RCW 43.43.754(2). Particularly given that there was no evidence before the trial court regarding whether the state patrol in fact had a sample of Mr. Pries's DNA, the orders for DNA collection were appropriate.

Based on the foregoing, Mr. Pries's conviction and sentences are affirmed.

A majority of the panel has determined this opinion will not be printed in the

6

No. 32958-5-III
*State v. Pries*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Pennell, J.

WE CONCUR:

Fearing, A.C.J.

Lawrence-Berrey, J.

7