[No. 58458-3.   En Banc.   May 21, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. RUBEN R. SALINAS, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Theresa L. Fricke, Senior Deputy Prosecuting Attorney,* and *Michael E. Shaw* and *Arthur Chapman, Deputies,* for respondent.

*James E. Lobsenz* on behalf of the American Civil Liberties Union, amicus curiae for appellant.

DOLLIVER, J. — This case arises from a reverse sting operation in which Willie Charles Davis, a paid police informant, posed as a narcotics seller. Detective Mark W. Orendorff of the King County Police Drug Enforcement Unit met Davis in early April 1990 when Davis was awaiting trial on a drug charge. Davis called Detective Orendorff to inquire about a reduction or dismissal of the drug charge in exchange for his assistance and cooperation with the King County Police in undercover drug operations. When Detective Orendorff informed Davis the King County Prosecutor would not agree to reduce or dismiss Davis' drug charge, Davis was still willing to work as a paid informant because he needed money to pay a defense attorney. Soon after his initial conversation with Detective Orendorff, Davis participated in a transaction which resulted in two arrests and the seizure of 10 ounces of cocaine.

Davis called Detective Orendorff again on April 28, 1990, and told him a man named "Ernesto" (who was unavailable at the time of Salinas' trial) knew someone who would buy 3 kilograms of cocaine. Davis and Ernesto later agreed that they, along with the buyer(s), would meet at a Denny's restaurant in the Georgetown area at 9:45 p.m. on April 29; if all went well, the transaction could be completed that night.

At 9:20 p.m. on April 29 King County Police Chief Nickle, acting pursuant to RCW 9.73.230, authorized the interception, transmission, and recording of any conversations regarding the sale of drugs between Davis and the potential buyer(s). The determination of probable cause to intercept was based on Davis' contacts with Ernesto and his assistance to the King County Police Drug Enforcement Unit in the past. The report also contained the certificate of Davis' consent to the interception and recording of his conversations. On May 2, 1990, Judge Jerome M. Johnson of King County Superior Court reviewed the authorization and

determined it met the requirements of RCW 9.73.230 (*see* Laws of 1989, ch. 271, § 204, p. 1291).

Pursuant to the authorization and certificate of consent, Davis wore a wire and proceeded with several surveillance detectives to Denny's. King County detectives had earlier searched Davis and his vehicle and provided him with 3 kilograms of cocaine obtained from police evidence. At the restaurant, Davis met Ernesto, along with Salinas and Mario Coronel (Salinas' codefendant whose trial was severed). Davis negotiated mainly with Salinas, who appeared to be the buyer and primary source of money. Davis, Ernesto, and Salinas transacted no business but spoke again by phone that night (actually the early morning hours of April 30) and agreed on the amount of cocaine (1.25 kilograms) and the price ($25,000). That conversation was recorded pursuant to the first authorization. They also agreed to talk again by phone to set up a time to meet and make the transaction.

The next day, Davis telephoned Salinas, and they agreed to meet at the same Denny's around 10:30 p.m. to complete the drug deal. Later in the day, Chief Nickle executed a final authorization allowing the recording and transmission of conversations to take place that night, again receiving Davis' consent and the subsequent approval of Judge Johnson.

Before going to the restaurant, Davis was provided with 1.25 kilograms of cocaine and wired with audio intercept equipment. When Davis and the accompanying surveillance officers arrived at Denny's, they found officers from the Seattle Police Department eating there and decided to move the transaction to the McDonald's parking lot down the street. Davis informed the defendant and Coronel of the change, and they proceeded to McDonald's. Salinas retrieved a brown paper bag containing the $25,000 from his car, then got into Davis' car. The following is a partial record of the conversation that ensued:

> [DAVIS]: I got the dope right here. Come on, open.
> SALINAS: What I'd like to do, open up so I can see, you know.

[DAVIS]: Go ahead. You've got to see?
SALINAS: (Unintelligible).
[DAVIS]: (Unintelligible).
. . . .
[DAVIS]: Nah. I have . . . how much is there?
SALINAS: That's . . . that's 17.
[DAVIS]: 17?
SALINAS: Yeah.
[DAVIS]: I told him if he was buying one, I wanted 18.
SALINAS: Huh? Wait, let me see. How much is in, you think?
[DAVIS]: Okay, so . . . a ki . . . a ki and a quart but if you only got 17, I can only let one go.
SALINAS: Yeah, well, I got 17 here, you know. That's what I got there, 17.
[DAVIS]: How much is that?
SALINAS: What, this is about nine. But I thought you were going to make one.
[DAVIS]: (Unintelligible) . . . 60 . . . 82 . . ..

Davis testified he handed Salinas the kilogram package of cocaine in exchange for a stack of money. Salinas put the 1-kilogram package of cocaine between his legs, opened it by gouging it with a key given to him by Davis, pinched part of it off, and tasted it. Davis then hit the "red alert" pager to signal the detectives they could make the arrest. Several officers arrived within seconds.

Detective Gaddy of the King County Drug Enforcement Unit testified he saw Salinas hand the money to Davis, and it appeared the transaction was still going on when he approached the car. Detective Gordon testified he secured the scene of the crime and inventoried the evidence. A paper sack containing $8,000 was on the right front floorboard, where Salinas had been sitting, and in the middle of the seat was a bundle of cash totaling $17,000. The 1-kilogram package of cocaine was unwrapped, lying between the two front seats, and the .25 kilogram was wrapped in newspaper between the seats.

Salinas was charged with possession of cocaine with intent to deliver, a violation of the Uniform Controlled Substances Act (RCW 69.50.401(a)). Before trial, he moved to suppress all evidence obtained by Davis, arguing both that the electronic interceptions were an unconstitutional invasion of

privacy and that Chief Nickle's determinations of probable cause for the initial authorization did not establish Davis' reliability. Judge Noe denied the motion to suppress; Salinas was found guilty of possession with intent to deliver. This appeal followed.

I

■ The defendant has not asked the court to review the privacy issue under the fourth amendment to the United States Constitution or under 18 U.S.C. § 2510 *et seq.*, which governs the interception, recording, and disclosure of wire, oral, and electronic communications under federal law. *See United States v. Caceres*, 440 U.S. 741, 744, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979). Rather, defendant asks us to find the statute unconstitutional under the provisions of Const. art. 1, § 7:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

The issue as to whether there is a right of privacy under our constitution where one party, as here, consents to the contents of the conversation being recorded was settled in three cases decided in the 1960's: *See State v. Jennen*, 58 Wn.2d 171, 361 P.2d 739 (1961); *see also State v. Wright*, 74 Wn.2d 355, 444 P.2d 676 (1968), *cert. denied*, 394 U.S. 961 (1969); *State v. Goddard*, 74 Wn.2d 848, 447 P.2d 180 (1968). This court held there was no expectation of privacy and Const. art. 1, § 7 did not prevent the disclosure of the conversation. These cases have neither been overruled explicitly or implicitly nor have the cases decided by this court subsequent to *Wright, Goddard*, and *Jennen*, none of which concerned the privacy of electronic communications, impaired the validity of the earlier cases. *See, e.g., State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990); *State v. Myrick*, 102 Wn.2d 506, 688 P.2d 151 (1984); *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984); *State v. Chrisman*, 100 Wn.2d 814, 676 P.2d 419 (1984); *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983); *State v. White*, 97 Wn.2d 92, 640 P.2d 1061

(1982); *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980); *State v. Hehman*, 90 Wn.2d 45, 578 P.2d 527 (1978).

Beginning in 1909, the Legislature has passed laws relating to communication privacy, *see, e.g.*, Laws of 1909, ch. 249, §§ 410, 411, p. 1021 (RCW 9.73.010, .020), providing criminal penalties for divulging a telegram or opening a sealed letter. RCW 9.73.030-.070, making it unlawful to intercept, record, or divulge wire communications without first obtaining the consent of all participants in the communication, was passed in 1967. RCW 9.73.090 was enacted in 1970, and allowed police, fire, emergency medical personnel, emergency communication centers, and poison control personnel to record incoming phone calls, exempting such personnel and places from the provisions of RCW 9.73.030 through 9.73.080. In addition, it allowed police to videotape or record custodial interrogations, but only after notifying the party being recorded or taped. RCW 9.73.090(1).

RCW 9.73.090 also allows electronic eavesdropping after authorization by a judge or magistrate with the consent of one of the parties to the conversation:

> It shall not be unlawful for a law enforcement officer acting in the performance of the officer's official duties to intercept, record, or disclose an oral communication or conversation where the officer is a party to the communication or conversation or one of the parties to the communication or conversation has given prior consent to the interception, recording, or disclosure: *Provided*, That prior to the interception, transmission, or recording the officer shall obtain written or telephonic authorization from a judge or magistrate, who shall approve the interception, recording, or disclosure of communications or conversations with a nonconsenting party for a reasonable and specified period of time, if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony . . .[.]

RCW 9.73.090(2).

This provision is now augmented by RCW 9.73.230, which is challenged in this case. Under that section, a chief law enforcement officer, or the designee of that officer above the rank of first-line supervisor, as part of a bona fide criminal investigation, may authorize the interception, transmission,

or recording of a conversation where one party to the conversation has consented to the interception and there is probable cause to believe the conversation will involve illegal drug trafficking. RCW 9.73.230(1). The authorizing police officer must complete a written report, including such details as the facts on which the determination of probable cause is based, the names of all involved persons, and the date, location, and approximate time of the conversation. Finally, the authorizing officer must report whether there was an attempt to obtain prior judicial approval pursuant to RCW 9.73.090(2) and, if there was such an attempt, the outcome of the attempt. RCW 9.73.230(2).

Aside from his assertion the police lacked probable cause to intercept his conversations, defendant makes no claim the requirements of RCW 9.73.230 were other than scrupulously followed. We hold RCW 9.73.230 does not violate Const. art. 1, § 7.

## II

Defendant contends Chief Nickle's determination of probable cause was insufficient to establish Davis' reliability because it contained merely a conclusion that Davis had provided assistance to the King County Police in the past. Therefore, the evidence seized as a result of that authorization should have been suppressed, and the subsequent authorizations to intercept should be declared invalid. Because the Legislature has not defined the term "probable cause" in RCW 9.73.230, we will apply the jurisprudence defining this term in a judicial context.

Defendant is correct in asserting the statute itself allows the interception, transmission, and recording of a conversation or communication only when probable cause exists to believe the conversation or communication will involve illegal drug trafficking. RCW 9.73.230(1)(b). If the facts supporting a determination of probable cause are based on information provided by an informant, as here, then the standards set forth in *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) and its progeny

must be considered. *State v. Jackson*, 102 Wn.2d 432, 443, 688 P.2d 136 (1984). This is true whether the issue is probable cause for an arrest or search without a warrant, or a magistrate's determination for issuing a warrant. *State v. Chatmon*, 9 Wn. App. 741, 745 n.2, 515 P.2d 530 (1973) (citing *Spinelli v. United States*, 393 U.S. 410, 417 n.5, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969)).

In this case, Chief Nickle made the initial determination of probable cause based on Davis' tip. Therefore the determination of probable cause, as detailed in his affidavit and later reviewed by Judge Johnson, must be tested under the *Aguilar-Spinelli* standard adopted by this court in *State v. Jackson, supra*.

For an informant's tip to create probable cause:

> (1) the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; and (2) the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable.

(Citations omitted.) *State v. Jackson*, 102 Wn.2d at 435. Defendant is challenging the second — or "veracity and reliability" — prong in this case and does not raise the issue of the sufficiency of the first — or "basis of knowledge" — prong.

To satisfy the second prong the credibility of the informant must be demonstrated. The most common way to show such credibility is to evaluate the informant's "track record", *i.e.*, has the informant provided accurate information to police in the past? *Jackson*, 102 Wn.2d at 437; *State v. Woodall*, 100 Wn.2d 74, 76, 666 P.2d 364 (1983).

In *State v. Woodall, supra*, this court held the veracity and reliability prong was unsatisfied when an affidavit merely stated the informant was "[a] reliable informant who has proven to be reliable in the past". *Woodall*, 100 Wn.2d at 75. While the mere statement that an informant is credible is not sufficient, it is almost universally held to be sufficient if, in the past, information has been given which has led to arrests

and convictions. *State v. Fisher*, 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982). Chief Nickle's affidavit is much more detailed than that in *Woodall*:

> Davis has assisted the King County Police Drug Enforcement Unit within the last month in another drug investigation. In that case two (2) suspects were arrested and 10 (ten) ounces of suspected cocaine were seized. Charges have been filed in that case for violation of the Uniform Controlled Substances Act and one suspect is awaiting trial.

Clerk's Papers, at 14. This statement regarding Davis' track record is more than a mere conclusion that Davis has proved reliable in the past. It discloses such facts as the recency of Davis' assistance (within the last month), the context in which he assisted police (a drug investigation), and the results obtained (two arrests, seizure of 10 ounces of cocaine, charges filed, suspect awaiting trial).

Based on the track record given, we find the affidavit in this case sufficient.

### III

Finally, defendant asserts there was insufficient evidence he was in possession of cocaine with intent to deliver.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Theroff*, 25 Wn. App. 590, 593, 608 P.2d 1254, *aff'd*, 95 Wn.2d 385, 622 P.2d 1240 (1980).

Defendant does not challenge the court's finding of an intent to deliver cocaine. Rather, he contends there was insufficient evidence to establish he actually *possessed* the

cocaine Davis had offered to sell him. He argues the amount of cocaine to be transferred and the price to be paid for it were still being negotiated when the officers arrived at the car, as revealed by Detective Gaddy's testimony. Defendant concludes Davis and the King County Police still had exclusive possession of the cocaine at the moment officers arrived to arrest him. We disagree.

While the transcript of the conversation between Salinas and Davis might reflect ongoing verbal negotiations, it sheds no light on whether Salinas was in physical possession of the cocaine. The trial court had to rely on the trial testimony, which was uncontroverted on the issue of possession. When viewed in the light most favorable to the State and taken as true, the evidence showed it was not Davis but Salinas who had physical possession and custody of the cocaine. Salinas had placed the 1-kilogram package between his legs, opened it, and was tasting its contents. He had handed a large sum of money to Davis. Based on those facts, it was reasonable for the trial court to infer Salinas was in physical possession of the drugs when police arrived.

To summarize: RCW 9.73.230 is constitutional; the requirements of the statute were followed; there was probable cause and there was sufficient evidence defendant was in possession of cocaine with intent to deliver.

One last note. As was observed in *Seattle v. Mesiani*, 110 Wn.2d 454, 755 P.2d 775 (1988), "the precise contours of the phrase 'without authority of law' in Const. art. 1, § 7 have yet to be determined by this court". *Mesiani*, at 462 (Dolliver, J., concurring). "[T]he 'authority of law' required by Const. art. 1, § 7 . . . includes authority granted by a valid (*i.e.*, constitutional) statute, the common law or a rule of this court." (Footnote omitted.) *State v. Gunwall*, 106 Wn.2d 54, 68-69, 720 P.2d 808, 76 A.L.R.4th 517 (1986). This is the first case in which the validity of a statute under article 1, section 7 has been questioned. Thus far, the jurisprudence this court

has developed on article 1, section 7 has exclusively tested the conduct of the police acting without the authorization of a statute. While in this case it was unnecessary to determine the reach of the Legislature under article 1, section 7 or the interplay between the courts and the Legislature which might be required by the phrase "without authority of law", the issue has now been posed; its determination will await another case and another day.

DORE, C.J., and BRACHTENBACH, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

UTTER, J. (concurring) — I concur in the result of the majority opinion. Under RCW 9.73.230(6), the law enforcement agency which has received an authorization resulting in the interception or recording of a conversation must submit a report, including the original authorization under subsection (2) of this section, to a judge of a court having jurisdiction. This report shall identify (a) the persons, including the consenting party, who participated in the conversation, and (b) the date, location, and approximate time of the conversation. RCW 9.73.230(7)(a) then provides that

> [w]ithin two judicial days of receipt of a report under subsection (6) of this section, the court shall make an ex parte review of the authorization, but not of the evidence, and shall make a determination whether the requirements of subsection (1) of this section were met. . . .

RCW 9.73.230(7)(a). If they are not met, then the recordings and any copies or transcriptions of the conversation or communication are destroyed. There is, then, subsequent judicial determination of whether probable cause exists to believe that the conversation or communication involves the unlawful manufacture, delivery, sale or possession with intent to manufacture, deliver, or sell controlled substances as defined in specified statutes. For this reason, I believe

the procedure in this case comported with the provisions of article 1, section 7 of the Washington State Constitution.