# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69834-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| PERRI SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 30, 2013 |

2013 DEC 30 AM 11: 56

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

PER CURIAM. Perri Lee Smith appeals his conviction for second degree assault with a deadly weapon, arguing that the State presented insufficient evidence for the jury to find the requisite element of intent. We affirm.

In June 2012, Smith, Kerrie Wilks, and Kenneth Sudduth lived on Vashon Island. Smith had romantic feelings for Wilks, but Wilks was not interested in a romantic relationship with him. Wilks and Sudduth were close friends.

On June 12, 2012, Smith and Wilks drove from Vashon Island to Seattle. They argued throughout the day. At one point, Wilks kicked and cracked the windshield of Smith's truck. By the time they returned to the ferry terminal in Seattle that evening, Wilks no longer wished to remain in Smith's car. She took her belongings and waited nearby for a later ferry to Vashon. Smith boarded an earlier ferry.

Wilks phoned Sudduth and asked him to pick her up at the ferry terminal on Vashon. When she arrived at the Vashon terminal, Wilks saw Smith's truck parked by the side of the road. As she walked past Smith's truck, she told him, "[G]et away from me or I am calling the police." She proceeded to Sudduth's car, which was parked a short distance away.

Sudduth pulled into traffic and was driving about 20 or 25 miles per hour when he heard a revving engine and saw Smith's truck in his rearview mirror. Smith's truck then struck Sudduth's car twice from behind.[1] Sudduth's car sustained damage. Smith then passed Sudduth and Wilks, yelling something as he went by. Sudduth called 911.[2] Later that night, police arrested Smith at his home.

The State charged Smith with second degree assault with a deadly weapon. RCW 9A.36.021(1)(c). At trial, Wilks and Sudduth testified to the facts recited above. Wilks also testified that Smith at some point told her "what he was going to do [ ] if he saw [her] get in [Sudduth's] car."

Smith, the defense's sole witness, testified to a different version of the incident. He admitted that he liked Wilks but understood that they could not have a romantic relationship and was not jealous of her relationship with Sudduth. He testified that when he arrived on Vashon Island on the evening in question, he initially went home, but then returned to the ferry terminal to look for Wilks because he "was concerned [about] how

_____

[1] Wilks, who suffers from posttraumatic stress disorder, could not recall all of the details of the collision and did not give a statement to police.

[2] The tape of Sudduth's conversation with the dispatcher was played for the jury.

she was going to get home." As Wilks walked by his truck, Smith asked if she wanted a ride home and she said no.

Smith then fell asleep in his truck because he was exhausted from the long day in Seattle. He was not sure how long he slept, but he eventually woke up and started to drive home. As he turned a corner, he ran into Sudduth's car.

Smith testified that he did not intentionally hit Sudduth's car and that he did not see it in time to stop—"[I]t was just a horrible timing situation . . . ." Smith also testified that the second impact was caused by Sudduth's car moving backwards into his truck— "I can't say that he deliberately backed into me or he . . . shifted incorrectly in all the excitement . . . ." Smith left right away because he did not want to "have an incident" with Sudduth, considering that Sudduth was "kind of volatile" and "an intimidator . . . of people."

The jury found Smith guilty as charged. He appeals.

### DECISION

The sole issue on appeal is whether the State presented sufficient evidence to prove that Smith intended to cause or create apprehension of bodily injury as required by the trial court's instruction 7.

When the sufficiency of evidence is challenged, this court considers "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. "We defer to the trier of fact on issues of conflicting testimony, credibility

of witnesses, and the persuasiveness of [the]evidence." State v. Manion, 173 Wn. App. 610, 633, 295 P.3d 270 (2013). Circumstantial evidence and direct evidence carry equal weight, State v. Varga, 151 Wn.2d 179, 201, 86 P.3d 139 (2004), and criminal intent may be inferred "from conduct that plainly indicates such intent as a matter of logical probability." State v. Abuan, 161 Wn. App. 135, 155, 257 P.3d 1 (2011).

Viewing the facts in the light most favorable to the State, we conclude that a rational trier of fact could have found the element of intent proven beyond a reasonable doubt. See Salinas, 119 Wn.2d at 201. The State presented evidence that Wilks did not return Smith's romantic feelings for her, that they argued throughout the day of the incident, that Wilks broke Smith's windshield during the arguments, that Smith "told [Wilks] what he was going to do [ ] if he saw [her] get in [Sudduth's] car," that Smith revved his truck's engine before hitting Sudduth's car, and that Smith "rammed" Sudduth's car twice in rapid succession. From this evidence, a rational trier of fact could infer, as a matter of logical probability, that Smith intended to either cause or create apprehension of bodily injury.

Affirmed.

FOR THE COURT:

Becker, J.

Appelwick, J.

Spearman, A.C.J.