**FILED**
**SEPTEMBER 20, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33424-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SARAH ELIZABETH HEIDT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Sarah Heidt appeals her conviction for distributing an imitation

controlled substance. She challenges the sufficiency of the evidence, arguing the

substance distributed was not by definition an "imitation controlled substance" and the

evidence did not show she knowingly distributed the substance. Because Ms. Heidt used

limonene as an imitation controlled substance and used it to dilute liquid Oxycodone

which she knew was administered to a patient every two hours, we affirm the jury's

verdict and subsequent felony judgment and sentence in the trial court.

## FACTS

Glen Isom hired Ms. Heidt to work as a nursing assistant at his residential assisted

living facility. Margaret Thorson was a resident of Mr. Isom's facility who had recently

been moved into hospice care. On her first day of work, Ms. Heidt shadowed Mr. Isom,

who showed her the locked medicine cabinet and explained what medications were kept

inside. One of the medications prescribed for Ms. Thorson and kept in the locked cabinet was Oxycodone. Ms. Thorson's pain management plan required that she take Oxycodone every two hours. This Oxycodone was in the form of a bottled yellow liquid. Ms. Heidt helped Mr. Isom care for Ms. Thorson.

The next morning, Ms. Heidt arrived for her shift. Mr. Isom administered Oxycodone to Ms. Thorson at 7:30 a.m. and 9:30 a.m. At 10:30 a.m., Mr. Isom helped a nurse insert a catheter in Ms. Thorson. Fifteen minutes into the procedure, Ms. Heidt knocked on the door and asked to go home because she was not feeling well. At Mr. Isom's request, Ms. Heidt stayed until after they inserted the catheter. Mr. Isom then spoke with Ms. Heidt, who "was very fidgety" and reiterated she was not feeling well. 1 Report of Proceedings (Feb. 24, 2015) (RP) at 96. Mr. Isom let Ms. Heidt leave but asked that she call him later to let him know if she would be in the next day.

Throughout that same day, Mr. Isom continued to give Ms. Thorson Oxycodone. While administering a mid-afternoon dose, he noticed the Oxycodone looked "murky" and "cloudy." *Id.* at 97. The Oxycodone smelled like soda or Kool Aid. Trying to identify the smell, Mr. Isom searched the kitchen and noticed two Popsicle sticks on top of the garbage. The Popsicles had been consumed that morning. Mr. Isom melted a yellow Popsicle from the freezer and found it smelled like the Oxycodone in Ms.

2

Thorson's prescription. When Ms. Heidt failed to call or return to work, Mr. Isom contacted the police.

Officers talked to Ms. Heidt, who admitted to taking some of the Oxycodone and putting a melted Popsicle in the bottle. Officers sent the tampered bottle of Oxycodone, a bottle of a melted yellow Popsicle, a bottle of a melted orange Popsicle, and a control bottle of Ms. Thorson's prescription Oxycodone to be tested by the Washington State Crime Lab. The tampered bottle contained Oxycodone and a trace amount of limonene, a compound found in Popsicles; in this context, "trace" meant there was more Oxycodone than limonene. 2 RP (Feb. 25, 2015) at 235, 241-42. The concentration of Oxycodone in the control bottle was 60 times stronger than that in the tampered bottle.

The court instructed the jury on what it is to manufacture, distribute, or possess with intent to distribute an imitation controlled substance. At defense counsel's request, the court also instructed on an alleged lesser included offense of adulteration of a drug. A jury found Ms. Heidt guilty of manufacturing, distributing, or possessing with intent to distribute an imitation controlled substance. By special verdict form, the jury unanimously found Ms. Heidt knowingly distributed an imitation controlled substance. Ms. Heidt appeals.

3

No. 33424-4-III
*State v. Heidt*

## ANALYSIS

Under RCW 69.52.030(1), "[i]t is unlawful for any person to manufacture, distribute, or possess with intent to distribute, an imitation controlled substance." To convict Ms. Heidt, the court instructed the jury it had to find she knowingly distributed an imitation controlled substance. Ms. Heidt challenges the sufficiency of the evidence for two elements: "imitation controlled substance" and "knowingly distributed." Clerk's Papers at 40.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* Direct and circumstantial evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). This court defers to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Emery*, 161 Wn. App. 172, 199, 253 P.3d 413 (2011).

*Imitation Controlled Substance*

Ms. Heidt claims the State did not prove she distributed an imitation controlled

4

substance because the prescription bottle still contained Oxycodone, a controlled substance. We disagree. The statute defines an imitation controlled substance not by purity or dilution but by the reasonable expectations of the substance's recipient. RCW 69.52.020(3). In some contexts, a recipient will reasonably anticipate that a drug will be diluted with unknown ingredients. This is common in the street drug context, where illicit substances are commonly cut with inert ingredients. But the situation here was much different. Ms. Thorson was prescribed pure Oxycodone. The expectation was that the vials administered to her would contain Oxycodone and nothing else. When Ms. Heidt removed some of the Oxycodone from Ms. Thorson's prescription bottle and replaced it with limonene, she created the false impression that the limonene was Oxycodone. The limonene was thus an imitation controlled substance, as defined by the statute.

*Knowingly Distributed*

Ms. Heidt next argues she did not knowingly distribute an imitation controlled substance because she had no intent to distribute the diluted Oxycodone; rather, she merely wanted to cover up the theft. We believe the facts were sufficient for the State to meet its burden.

Viewing the evidence in the light most favorable to the State, Ms. Heidt knew Ms.

5

No. 33424-4-III
*State v. Heidt*

Thorson was scheduled to receive a dose of Oxycodone every two hours. She knew the liquid Oxycodone in the medicine cabinet belonged to Ms. Thorson. The knowledge element was thus satisfied because Ms. Heidt had information that would lead a reasonable person in her situation to believe the diluted Oxycodone would be distributed to Ms. Thorson. Ms. Heidt took some of the Oxycodone and replaced it with a melted Popsicle. Mr. Isom then administered the diluted Oxycodone to Ms. Thorson. This act satisfied the definition of constructive distribution. RCW 69.52.020(2).

## CONCLUSION

Based on the foregoing, we find there was sufficient evidence to support the jury's verdict. As such, we affirm the verdict and the felony judgment and sentence of the trial court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____      _____
Lawrence-Berrey, A.C.J.               Siddoway, J.

6