# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, ) | No. 76837-9-I |
| Respondent, ) | |
| ) | DIVISION ONE |
| v. ) | |
| ) | UNPUBLISHED OPINION |
| CHARLES MARCELUS TAYLOR, ) | |
| ) | |
| Appellant. ) | FILED: July 23, 2018 |
| ) | |

APPELWICK, C.J. — A jury convicted Taylor of attempting to elude a police vehicle. On appeal, he argues that the evidence was insufficient to support the conviction, and that the State withheld evidence of the canine's performance history in violation of Brady v. Maryland.[1] We affirm.

## FACTS

On June 17, 2016, Trooper Adam Gruener ran a search of the license plate of a Honda Accord that was driving eastbound on State Route 518. The search revealed that the Honda had been sold over 45 days before, but title had not yet been transferred as required by law.

Trooper Gruener activated his lights and pursued, but the Honda accelerated. For safety reasons, Trooper Gruener terminated the pursuit a short time later. But, from a distance, he observed the Honda pull into a parking lot.

---

[1] 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Trooper Gruener followed, located the Honda in a parking lot, and approached the vehicle on foot. He saw a man in a white shirt run away from him

Tukwila Police Officer Brent Frank arrived, along with his canine partner, Ace. Officer Frank and Ace located the suspect roughly 400 yards away. At trial, Trooper Gruener identified Charles Taylor as the suspect apprehended by the canine unit.

Taylor was charged with attempting to elude a pursuing police vehicle, with an endangerment by eluding enhancement. The jury found Taylor guilty of attempting to elude a pursuing police vehicle. But, it was discharged after it was unable to reach an agreement on the enhancement. Taylor appeals.

## DISCUSSION

Taylor makes two arguments. First, he argues that the evidence was insufficient to support the conviction, because there was insufficient evidence to corroborate Ace's track and identification. Second, he argues that the State violated Brady by failing to produce or preserve evidence of Ace's training and performance history, and particularly any records of false identifications.

I. Sufficiency of Evidence

Taylor first contends that there was insufficient evidence to corroborate Ace's identification, and therefore there was insufficient evidence to sustain his conviction.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119

Wn.2d 192, 201, 829 P.2d 1068 (1992). When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. Id. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Id.

While dog tracking evidence is admissible to show a defendant's guilt, such evidence, by itself, is legally insufficient to prove identification. State v. Loucks, 98 Wn.2d 563, 567, 656 P.2d 480 (1983); State v. Nicholas, 34 Wn. App. 775, 778, 663 P.2d 1356 (1983). "The dangers inherent in the use of dog tracking evidence can only be alleviated by the presence of corroborating evidence identifying the accused as the perpetrator of the crime." Loucks, 98 Wn.2d at 567. "Corroborating evidence is defined as '[e]vidence supplementary to that already given and tending to strengthen or confirm it.'" Id. at 335 (alteration in original) (citing BLACK'S LAW DICTIONARY 414 (4th ed. 1968)).

Taylor argues that there was insufficient evidence beyond Ace's identification. He argues that Loucks requires reversal. In Loucks, police deployed a canine after a burglary. 98 Wn.2d at 564-65. The canine's track led police to Loucks, who was lying down at the bottom of a stairwell nearby. Id. at 565. Blood and fingerprints at the crime scene did not belong to Loucks. Id. No other evidence suggested that Loucks was at the crime scene. Id. at 566. However, the State's theory was that there was an accomplice, because large furniture was removed, and there were two break-in points. Id. at 568. The Supreme Court found that this

3

was insufficient to corroborate the canine identification, and thus the canine track and identification, "standing alone," was insufficient to sustain the conviction. Id.

But, in Taylor's case, the canine identification does not stand alone. Testimony linked him with the specific vehicle that eluded police. Danielle McKim was registered as the purchaser of the vehicle in the recent sale. McKim testified that her ex-boyfriend had offered her the vehicle in question, but she had turned down the gift, and her boyfriend continued to drive it. She stated that her ex-boyfriend who had offered her the vehicle had a friend named Charles Taylor. McKim testified that the defendant looked familiar, but stated that she had thought that the person she remembered as Taylor was "a completely different person" than the defendant.

Taylor was arrested at 2:45 a.m., within 30 minutes of the beginning of the dog track, in an empty business park 400 yards from the vehicle, hiding between a knee-high hedge and a closed business building whose parking lot was empty. He had on dark pants and a light colored shirt as the officer described.

The evidence associates Taylor with the vehicle and takes this case beyond the facts of Loucks. It satisfies the corroborating evidence standard, because it " 'tend[s] to strengthen' " the conclusion that Taylor committed the charged crime. Ellis, 48 Wn. App. at 335.

Substantial evidence supports Taylor's conviction for attempting to elude a pursuing police vehicle.

II. Brady Evidence

Taylor next argues that the State wrongfully withheld exculpatory evidence, in violation of Brady. The records that he alleges were wrongfully withheld pertain to Ace's training and performance history. These records would be exculpatory, he claims, because they may show that Ace's identifications tend to be unreliable.

At trial, Taylor sought to exclude canine tracking evidence under Brady, because the State never disclosed any records about the canine's performance history. The trial court ordered the State to produce all materials concerning any prior misidentifications by Ace, but the State represented that no such materials existed, and that Ace had never identified the wrong suspect. The trial court held that the State had therefore met its Brady obligation. And, the court further reasoned that Taylor was free to examine Officer Frank about reliability or any potential history of misidentification. During trial, Officer Frank testified that Ace has a tracking accuracy rate of over 85 to 90 percent. Taylor argues that the evidence of missed tracks is exculpatory, and he should have received records of such evidence.

Under Brady, the suppression by the prosecution of evidence favorable to an accused upon request violates due process, when the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. State v. Mullen, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). Brady obligations extend not only to evidence requested by the defense but also to favorable evidence not specifically requested by the defense. Id. The government must

disclose not only the evidence possessed by prosecutors but evidence possessed by law enforcement as well. Id.

In order to establish a Brady violation, a defendant must establish three things: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) that evidence must have been suppressed by the State, either willfully or inadvertently, and (3) the evidence must be material. State v. Davila, 184 Wn.2d 55, 69, 357 P.3d 636 (2015). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Mullen, 171 Wn.2d at 894. If the State has failed to preserve "material exculpatory evidence," criminal charges must be dismissed. State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994).

The State represented that no records of Ace's success or failure in tracking existed. However, Taylor argues that the State was required to maintain such records under former WAC 139-05-915(7)(a) (2016). And, he argues that by not maintaining those records the State deliberately failed to maintain Brady evidence.

Former WAC 139-05-915(7)(a) required law enforcement agencies to "keep training, performance, and identification records on canines." Specifically, the WAC requires the following types of records:

> (i) Microchip number (if applicable);
> (ii) Canine's name;
> (iii) Breed;
> (iv) Training records;
> (v) Certification date;
> (vi) Date acquired or purchased;
> (vii) Source from which the canine was acquired;

(viii) Purpose, use, or assignment of canine;
(ix) Handler's name;
(x) The date and reason the canine was released from service; and
(xi) Copies of all incident reports in which use of the canine resulted in the use of force.

Id. On its face, the regulation does not require records of success or failure in specific tasks. Id. Only incident reports involving use of force are called out for documentation. Id. Taylor fails to establish that the State was obligated to create and possess records that reflect the success or error rate of the canine.

Taylor argues that Aguilar v. Woodford, 725 F.3d 970, 980 (2013) supports reversal. In that case, the prosecution submitted evidence of a "scent test," where, one month after the crime at issue, the canine associated a scent from a suspects clothes to a vehicle that had been impounded. Id. at 978-79. The State failed to disclose that this canine had made multiple misidentifications in the past, including identifying a suspect that had been in prison at the time that the crime at issue had been committed. Id. at 980. The court reversed the conviction, and reasoned that "[t]here is no doubt that Reilly's history of making erroneous scent identifications is exculpatory evidence." Id. at 982.

This case is distinguishable from Aguilar. There, the evidence showed a documented history that the canine had identified the wrong suspect. Id. at 980. But, here there is no indication that the documentation sought ever existed.

Taylor also argues that City of Seattle v. Fettig, 10 Wn. App. 773, 519 P.2d 1002 (1974) requires reversal. In that intoxicated driving case, the city had destroyed videotape evidence of a defendant's sobriety tests. Id. at 773-74. This left the testifying police officers as the primary witnesses as to the defendant's

7

intoxication. Id. at 774. This court reversed, because the videotape was corroborating evidence of the officers' testimony and breath test results, were the only remaining evidence of the defendant's intoxication. Id. 776-77. Notably, the court relied on the fact that a district court judge, who had presided on the case at a prior stage and had viewed the video, testified that the videotape negated the impression that Fettig was intoxicated. Id. But, like Aguilar, Fettig is also distinguishable. In Fettig there was no dispute that the exculpatory evidence existed but was destroyed. Here, there is no indication that the records ever existed or that the State was required to have and maintain them.

Taylor has failed to carry his burden to show a Brady violation.

We affirm.

WE CONCUR:

_Appelwick, CJ_

_Leach, J._                          _Dwyer, J._