**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE v. WASHINGTON, | No. 54228-5-II |
| Respondent, | |
| v. | |
| JASON KEITH CISSNER, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, A.C.J.—Jason Keith Cissner assaulted his longtime girlfriend, April Rognlin, outside of her home one morning. Rognlin and a witness both testified that Cissner choked her, and Rognlin confirmed she had difficulty breathing. The trial court admitted pictures of the injuries to her neck. The jury convicted Cissner of second degree assault by strangulation – domestic violence.

Cissner argues there was insufficient evidence that Rognlin's airway or blood flow was obstructed, which is necessary to support his conviction for second degree assault by strangulation. Cissner also argues that the State failed to prove a 1986 conviction included in Cissner's offender score had not washed out. The State concedes that the sparse record does not support the offender score and we should remand for resentencing. Finally, Cissner challenges the imposition of supervision fees, which the State agrees can be revisited upon resentencing.

We affirm Cissner's conviction but accept the State's concessions and remand for resentencing. The trial court has discretion on resentencing to determine whether supervision fees should be imposed.

FACTS

Rognlin lived in a house with Cissner, while her friend, Juanita Kenworthy, lived in a trailer on the same property. Rognlin had been sick for a few days and was staying with Kenworthy because Kenworthy was a retired nurse. She was sleeping in Kenworthy's trailer in the morning when she awoke to Cissner screaming for her. Rognlin went outside, Cissner assaulted her, and she was injured. The State charged Cissner with second degree assault – domestic violence, alleging he intentionally assaulted a family or household member by strangulation.

At trial, Rognlin testified that when she awoke to Cissner screaming for her, she went outside to see if she could appease him, while Kenworthy stayed in the trailer but watched through a window. Rognlin testified that she threatened to try to get a restraining order if Cissner did not stop screaming. He attacked her, and she ran away, hoping Kenworthy would see she was in trouble. Cissner caught her and, Rognlin testified, "[H]e had me around the neck." Verbatim Report of Proceedings (VRP) (Oct. 22, 2019) at 77. Then she explained:

> Q: . . . . Now at any time did he have one or more hands on your neck?
>
> [Rognlin]: He had a hand on my hair, pulled my hair, and then, yeah, on my neck mostly. I think he had his arm around --
>
> Q: Was there ever any difficulty breathing?
>
> [Rognlin]: Yeah, it was--
>
> Q: Make sure we got this. He chased you out of the house and gets you into -- at some point, hands on the neck and switches to a headlock?
>
> [Rognlin]: …All I know is I was being confined and choked or whatever and drug and trying to get back in the house.

*Id.* at 78.

Rognlin's friend, Kenworthy, also testified about what she saw. Kenworthy said she looked out her door "and he had his hand around her neck and she was trying to get away, and then he just put a choke[ ]hold on her and dragged her towards the house." *Id.* at 65. When pressed, she said two more times that she saw Cissner put his hands around Rognlin's neck. She also said that Cissner "put a choke[ ]hold on her" and was "choking" her. *Id.* at 67, 71.

Kenworthy called 911 and Cissner left the property. An officer arrived and interviewed Rognlin. The officer took pictures of injuries to Rognlin's neck, and the trial court admitted the pictures into evidence. The officer testified that based on his training and experience, the photographs were "consistent with someone being strangled or assaulted in the area of their neck." *Id.* at 50.

The trial court instructed the jury that to convict Cissner of second degree assault, it had to find that Cissner "[i]ntentionally assaulted April Rognlin by strangulation." Clerk's Papers at 21. The trial court defined "strangulation" as "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to breathe." *Id.* With the agreement of both parties, the trial court also instructed the jury on fourth degree assault as a lesser included offense that the jurors should consider if they could not conclude beyond a reasonable doubt that Cissner committed second degree assault.

In closing, the State argued that Cissner intentionally strangled Rognlin, relying on her testimony that her breathing was affected, as well as Kenworthy's testimony about what she saw and the pictures of Rognlin's injuries. Defense counsel argued that Cissner did not intend to strangle Rognlin and he was just trying to get her into the house. He also argued that her airway

was not cut off and she did not require medical attention, so there was no evidence the definition of "strangulation" was met.

The jury found Cissner guilty of second degree assault with a special finding that he and Rognlin were members of the same household.

The trial court then sentenced Cissner using an offender score of 7, which Cissner argues included a 1986 conviction, a fact the State does not dispute. The trial court found Cissner indigent but imposed supervision fees in the community custody portion of Cissner's sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE TO SUPPORT STRANGULATION

Cissner challenges the sufficiency of the evidence supporting his conviction for second degree assault by strangulation. Sufficiency of the evidence is a question of law that we review de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

To convict of assault by strangulation, the State must prove that the defendant compressed the victim's neck and thereby either (1) obstructed the person's blood flow or ability to breathe or (2) intended to obstruct the person's blood flow or ability to breathe. RCW 9A.36.021(1)(g); RCW 9A.04.110(26). The obstruction need not be complete; a partial obstruction of blood flow or the ability to breathe is enough. *State v. Rodriguez*, 187 Wn. App. 922, 934-35, 352 P.2d 200 (2015). Cissner argues that the evidence at trial was insufficient for a reasonable person to conclude that

he obstructed Rognlin's blood flow or her ability to breathe or acted with the specific intent to cause that result.

We disagree. The responding officer testified he saw injuries to Rognlin's neck and the jury saw pictures of those injuries. In addition, both Rognlin and Kenworthy testified that Cissner put his hands around Rognlin's neck, choked her, and put her in a choke hold. Rognlin briefly confirmed that she had difficulty breathing and this testimony was undisputed.

Cissner argues that other cases affirming convictions for second degree assault by strangulation have involved stronger evidence of obstructed airflow. He also points out that when determining whether the court should give the lesser included fourth degree assault instruction outside of the presence of the jury, the trial court referred to Rognlin's testimony supporting strangulation as "kind of so-so." VRP (Oct. 22, 2019) at 87. But these arguments do not address the test we must apply for sufficiency of the evidence.

Viewing the evidence in the light most favorable to the State and drawing all inferences in the State's favor, the evidence presented in this case was sufficient for the jury to find that Cissner obstructed Rognlin's ability to breathe. We conclude that the evidence was sufficient to support Cissner's conviction for second degree assault.

## II.    OFFENDER SCORE

Cissner argues that his offender score included a 1986 conviction for assault and the State failed to prove that this conviction had not washed out. The State responds that the record on sentencing in this case is "scant at best." Br. of Resp't at 10. The State therefore concedes that this court should remand for resentencing.

There are no documents in the record supporting the calculation of Cissner's offender score other than the list of prior convictions in the judgment and sentence. There is no further discussion in the record about the 1986 prior conviction in particular or whether it had washed out. We accept the State's concession and conclude that remand for resentencing is appropriate.

### III.     SUPERVISION FEE

Cissner points out that the trial court found him indigent and in the legal financial obligation section of his judgment and sentence, the trial court imposed only the mandatory crime victim assessment. But in a different part of the judgment and sentence, the trial court ordered that he pay supervision fees as determined by the Department of Corrections while on community custody. Cissner argues that the trial court intended to waive discretionary costs and fees and, therefore, the supervision fee provision should be stricken from his judgment and sentence.

The State responds that supervision fees are not "costs" that must be waived under RCW 10.01.160(3) where the defendant has been found to be indigent and, therefore, the trial court had discretion to impose supervision fees. Nevertheless, the State agrees that the trial court is free to revisit whether supervision fees should be imposed upon resentencing.

We agree with the State that supervision fees are not "costs" under RCW 10.01.160(3) that must be waived if the defendant is indigent as defined in RCW 10.101.010(3)(a)-(c). *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021). The trial court has discretion upon resentencing to determine whether it wants to impose supervision fees.

### CONCLUSION

We affirm Cissner's conviction, but we remand for resentencing. The trial court has discretion on resentencing to determine whether supervision fees should be imposed.

No. 54228-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, A.C.J.

We concur:

Sutton, J.

Veljacic, J.