IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>MALIK TUPAC LEE,<br><br>Appellant. | No. 81136-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — A jury convicted Malik Tupac Lee of manslaughter in the first degree for killing his friend Elijah Day with a firearm. Lee appeals contending there is insufficient evidence to support the conviction. We affirm.

FACTS

Lee and Day were childhood friends. In 2017, they frequently hung out and smoked marijuana at Day's apartment in Des Moines. At trial, Day's father testified that during the workweek he lived with Day in the apartment so that he could drive Day to work and to the store. Day's father recalled Lee frequently visiting the apartment. At trial, Lee testified to hanging out with Day almost every day and occasionally spending the night at Day's apartment.[1]

Lee and Day owned guns. According to Day's father, Day "loved to shoot guns" and owned multiple guns. Day's father testified that Day usually kept a

---

[1] Day's father testified he did not remember Lee spending the night in the apartment.

Citations and pin cites are based on the Westlaw online version of the cited material.

gun on a table at his apartment while he smoked marijuana but was told not to have loaded guns in the apartment. According to Lee, Day's father told Day not to play with guns in the house or keep bullets in the chamber.

On November 10, Lee was hanging out with his cousin Dante Hennings, and Elan Lockett and Oscar Carillo-Salinas who did not know Day.[2] Lee had called Day while Day was on his way home from work to see if he could bring the group to Day's apartment and Day agreed.

The group drove to Day's apartment in a stolen Honda Civic while they smoked marijuana. The group met Day in the apartment parking lot. Day began to smoke marijuana and passed his new gun around for the group to see. Then, the group went upstairs to Day's third-floor apartment and smoked more marijuana.

Carillo-Salinas testified that after entering the apartment he put marijuana on a table while Lee and Day sat down on a couch. Carillo-Salinas recalled standing with his back to the couch facing the table and kitchen. Out of the corner of his eye, Carillo-Salinas saw Day stand up from the couch and then he heard a gunshot. Carillo-Salinas turned around and saw Day on the floor shaking and bleeding. He also saw Lee standing with a gun in his hand and then lowering the gun. Carillo-Salinas remembered others asking him to flip Day's body over to get Day's guns and phone, but he refused. He testified that Lee and Hennings rushed to Day, patted him down, and took two guns from him.

---

[2] Lee and Carillo-Salinas were the only two present during the shooting who testified at trial.

2

According to Lee, when they entered the apartment, Hennings and Carillo-Salinas sat on the couch, Lockett stood by the couch, and Day went into the kitchen. Lee testified that he was standing near the couch when he decided to take his gun, a nine millimeter semiautomatic Beretta pistol, out of his shorts pocket and remove the unfired cartridge from the chamber. To remove an unfired cartridge from the chamber, Lee could have pulled the top part of the gun, called the slide, back to reveal the chamber and then manually removed the unfired but loaded cartridge. Lee testified to pulling the slide back and shaking the gun when it "went off." Lee said this occurred at the same time Day walked from the kitchen and "messed around on the table." The bullet struck the back of Day's head. It was later discovered that the bullet had exited through his right cheek. Lee said he stood in shock while Carrillo-Salinas wiped fingerprints from the doorknobs. Lee testified that Hennings and Carrillo-Salinas asked him to take the guns and phone from Day's body, but he did not. He recalled Hennings and Lockett taking the two guns and Carrillo-Salinas taking the cell phone. Lee thought Day was dead. Carillo-Salinas testified that Day was still alive when they left the apartment. Lee and the others quickly left the apartment without calling for help.

Later that evening, Day's neighbor on the first floor saw Day laying and bleeding outside her front door and called 911. Police found Day laying on the ground partially on his right side and stomach while on top of his right arm that

3

held a gun.[3]  A trail of smeared blood led from Day's body up each flight of stairs to his open apartment door.

Paramedics transported Day to Harborview Medical Center where he died a few days later.

About two weeks later, Lee drove the stolen car to a gas station where police arrested him.  Incident to arrest, police recovered the gun with which Lee shot Day.  At trial, the State presented evidence that nearly two months before Lee shot Day, Lee went to a Safeway gas station and fired the same gun at the wall of a nearby 7-Eleven store.

Also at trial, when asked if he pulled the trigger in Day's apartment, Lee testified, "When I was there, I didn't -- now I -- from testimony from experts, it seems like I did, but at that time I thought the slide slipped out and . . . went off. . . . I guess I did."  It appears Lee was referring to the testimony from his and the State's experts.

Lee's forensic expert testified that the gun had a missing spring, which would sometimes prevent the slide from automatically returning and loading another cartridge, and would sometimes require manual intervention.  Thus, the slide would sometimes remain stuck in the back position preventing the gun from discharging; however, that in itself would not cause an accidental discharge.  The gun was otherwise fully operational.  Lee's expert testified that the loaded gun could discharge if a person had their finger on the trigger and the slide released

---

[3] Police also recovered a cell phone and later recovered an additional gun from Day's car.

causing the person to flinch.  The State's expert testified that Lee was four to six feet behind Day when the gun fired.

The court instructed the jury on manslaughter in the first degree and manslaughter in the second degree as lesser included offenses of murder in the second degree.[4]  The jury acquitted Lee of murder in the second degree but found him guilty of manslaughter in the first degree with a firearm.[5]

Lee appeals.

DISCUSSION

Lee contends there is insufficient evidence to support his conviction of manslaughter in the first degree because there is insufficient evidence to show he acted recklessly.  We disagree.

Due process requires the State prove every element of a crime beyond a reasonable doubt.  State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017).

> The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.  When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.  A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.

State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (internal citations omitted).

---

[4] The State had charged Lee with two counts of murder in the second degree; one count alleging intentional murder and the other alleging felony murder.

[5] Lee also was convicted of possession of a stolen vehicle and two counts of unlawful possession of a firearm.  Lee does not appeal those convictions.

A person who recklessly causes the death of another person is guilty of manslaughter in the first degree. RCW 9A.32.060(1)(a). " '[R]ecklessly' means that a person knew of and disregarded *a substantial risk that a homicide may occur.*" State v. Henderson, 182 Wn.2d 734, 743, 344 P.3d 1207 (2015) (citing State v. Gamble, 154 Wn.2d 457, 467, 114 P.3d 646 (2005)).

The State presented evidence that Lee was familiar with guns and had previously used the very gun that killed Day. Lee also understood the dangers of having a loaded gun in an apartment with others and that Day's father disapproved of doing so. Despite that, Lee, after having smoked marijuana, brought a loaded gun into Day's apartment with multiple people in the room, decided to remove a cartridge in the chamber by pulling on the slide and shaking it while keeping a finger on the trigger, and he did so while holding the gun up about four to six feet behind Day. Lee contends his conduct was merely negligent. However, a rational juror could conclude Lee engaged in reckless

conduct, not mere negligence, and that Day died as a result of Lee's reckless acts.  Sufficient evidence supports the conviction.[6]

    We affirm.

_Coburn, J._

WE CONCUR:

_Chun, J._

_Verellen, J._

---

[6] Citing In re Pers. Restraint of Heidari, 174 Wn.2d 288, 292, 274 P.3d 366 (2012), Lee requests we reverse his conviction for manslaughter in the first degree and remand for the trial court to impose a conviction for manslaughter in the second degree.  Because we affirm his conviction for manslaughter in the first degree, we deny his request.