**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　Respondent,<br><br>　　　　v.<br><br>TIFFANY VANESSA BRADLEY,<br><br>　　　　　　　Appellant. | No. 87340-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Tiffany Bradley appeals her conviction for first degree malicious mischief. Bradley argues that the State presented insufficient evidence that she caused the flooding that damaged the apartment building where she lived. We affirm.

I

The Tacoma Housing Authority operates a residential building called The Rise at 19th. The Rise is a four-story apartment complex with the main entrance on the first floor and units on the first, second, and third floors. The fourth floor has only a corridor that provides access to the roof. A common stairwell connects each floor, and residents, staff, and visitors can access the stairwell through doors on the first, second, and third floors.

There are about 12 standpipes located throughout the building.  A standpipe is a large, approximately four-inch-wide pipe that the fire department can use if there is no public hydrant nearby.  The standpipe can release up to 5,000 gallons of water per minute when its valve is open.  A fire fighter can remove the cap, connect a water hose, and turn the valve to release water.  There is a standpipe in the stairwell landing on each floor of The Rise, including on the fourth floor.

Bradley lived on the first floor in unit 103.  At some point in February 2023, Bradley was served with legal notice of eviction.  At the time of the incident, Bradley had not yet vacated the premises.

In the early morning of March 9, 2023, water was released from the fourth-floor standpipe, flooding The Rise.  Fire fighters arrived and turned off the water, but by that point the flooding had reached every floor and impacted 52 out of the 64 units in the building.  Residents were evacuated and had to be relocated to new housing, and repairs to the building exceeded $3 million.

Surveillance footage showed Bradley exiting her first-floor apartment and entering the stairwell at around 4:03 AM.  Ex. 20.[1]  Bradley initially turned toward the corner of the stairwell but then changed direction and walked up the stairs.  Ex. 20, at 0 min., 17 sec. to 0 min., 50 sec.  Around 12 minutes later, Bradley is seen standing outside the door of her apartment.  Ex. 20, at 0 min., 52 sec.  Bradley then returned to the stairwell and walked up the stairs a second time.  Ex. 20, at 1 min., 48 sec. to 1 min., 57 sec.  She returned about two minutes later, as alarm lights began to flash.  Ex.

---

[1] Ex. 20 is an excerpt from a surveillance video taken at The Rise.

20, at 2 min., 14 sec. Shortly after, water can be seen flowing down the stairs and puddling on the first-floor hallway. Ex. 20, at 2 min., 52 sec.

Bradley was still on the scene when police officers arrived later that morning. When Tacoma Police Officer Gregory Cenicola asked Bradley about the incident, Bradley admitted to going up to the fourth floor but said she had done so to turn off the water. Ex. 18, at 0 min., 46 sec. to 1 min., 4 sec.[2] However, in the surveillance footage, the alarm lights were not flashing when Bradley went up the stairs. Ex. 20, at 1 min., 48 sec. to 1 min., 57 sec.

The State charged Bradley with first degree malicious mischief. A jury found Bradley guilty as charged, and she successfully requested a term of 36 months of community custody under the mental health sentencing alternative, RCW 9.94A.695. Bradley appeals.

II

Bradley argues that the State presented insufficient evidence that she caused water to be released and subsequently flood The Rise. In a criminal case, "[t]he test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1067 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the

---

[2] Ex. 18 is an excerpt from Officer Cenicola's body camera video.

persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Lastly, we deem circumstantial evidence as reliable as direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A

A person is guilty of first degree malicious mischief if she knowingly and maliciously causes physical damage to the property of another in an amount exceeding $5,000. RCW 9A.48.070(1)(a). At trial, the jury was instructed the following:

> To convict the defendant of the crime of malicious mischief in the first degree, each of the following three elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about March 9, 2023, the defendant caused physical damage to the property of another in an amount exceeding $5,000;
>
> (2) That the defendant acted knowingly and maliciously; and
>
> (3) That this act occurred in the State of Washington.

The jury was also instructed that "the term 'circumstantial evidence' refers to evidence from which, based on your common sense and experience, you may reasonably infer something that is at issue in this case. The law does not distinguish between direct and circumstantial evidence in terms of their weight or value in finding the facts in this case. One is not necessarily more or less valuable than the other."

B

In the surveillance footage, Bradley is captured looking down the hallway in the lobby before approaching the stairwell door and going up the stairs. Ex. 20, at 0 min., 18 sec. to 0 min., 50 sec. Minutes later, Bradley can be seen coming downstairs while

the alarm lights are flashing and water is coming down. Ex. 20, at 2 min., 14 sec. Barbara Pearsall, the portfolio manager for the Tacoma Housing Authority, testified that once a standpipe is activated at The Rise, water is released, strobes and building alarms go off, and the Tacoma Fire Department is immediately notified and dispatched.

Bradley is the only person captured by the motion activated cameras in the hallway at the time in question. And she admitted to law enforcement that she did go upstairs, albeit to turn off the water. Ex. 18, at 0 min., 46 sec. to 1 min., 4 sec. But Bradley's explanation is contradicted by the video evidence. In the footage, there is no water coming down the stairs when she heads up the stairwell. Ex. 20, at 1 min., 48 sec. to 1 min., 57 sec. The flashing lights—indicating that a standpipe had been opened—only activated after Bradley went up the stairs and shortly before she came back down. Ex. 20, at 2 min., 14 sec. And only after that can the building be seen being flooded with water flowing down the stairwell. Ex. 20, at 2 min., 52 sec.

Moreover, Pearsall testified that Bradley was no longer welcome at The Rise at the time of the incident. Bradley had been served with legal notice of eviction in February but had yet to vacate the premises.

Considering the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found Bradley guilty of first degree malicious mischief.

We affirm.

No. 87340-7-I/6

_Mann, J._

WE CONCUR:

_Bni, J._                          _Chung, J._