

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38795-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARCOS A. GUTIERREZ, | ) | |
| also known as MARCOS ACOSTA, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Marcos Gutierrez appeals his conviction for second degree rape. We affirm.

## FACTS[1]

The victim and her best friend were having a girls' night together at the victim's residence. Over the course of the evening, the victim drank considerable amounts of alcohol, to the point where she was "very intoxicated." Rep. of Proc. (RP) (Jan. 11, 2022) at 46. The victim estimated her level of intoxication was at "a ten." *Id*. at 76. In contrast, her best friend did not drink that much because alcohol makes her sick.

---

[1] Because Mr. Gutierrez raises an evidentiary sufficiency challenge, we construe the facts in the light most favorable to the State. *See State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

At some point in the evening, the friends invited an acquaintance named Tristian Hewankorn over to the residence. Mr. Hewankorn joined in the drinking and also became extremely intoxicated. He intermittently passed out and got sick. Mr. Gutierrez, a friend of Mr. Hewankorn, was eventually summoned to come pick up Mr. Hewankorn and take him home.

When Mr. Gutierrez arrived at the residence he went inside. Shortly thereafter, the victim's best friend started looking around for the victim and saw the bathroom door was shut. She went to the door and called out the victim's name. Hearing no response, she opened the door and saw Mr. Gutierrez and the victim inside. Mr. Gutierrez's pants were halfway down and he was holding the victim by the shoulders while forcibly engaging her in sexual intercourse. The best friend noticed the victim seemed nearly unconscious, and was unable to support her head or upper body, as Mr. Gutierrez was propping her torso up as he raped her.

The best friend screamed and pushed Mr. Gutierrez out of the bathroom. The best friend summoned police while the victim cried and asked what was happening. The victim later testified that she had partially blacked out. She remembered going to the bathroom and sitting on the toilet when Mr. Gutierrez walked in and made remarks about

a tattoo on her leg. The next thing she knew, her best friend barged into the bathroom and started screaming.

Police were dispatched to the vicinity and detained Mr. Gutierrez. Mr. Gutierrez denied having sex with the victim and agreed to provide a DNA sample.

Meanwhile, the victim and her best friend went to the hospital where the victim was treated by emergency room personnel. The victim received an examination and evidence was also collected for a rape kit. The emergency room nurse prepared a report noting an abnormal laceration to the victim's vulva. DNA collected from the victim was eventually linked to Mr. Gutierrez.

The State charged Mr. Gutierrez under RCW 9A.44.050(1)(b) with second degree rape, which requires proof that the victim was "incapable of consent by reason of being physically helpless or mentally incapacitated." Mr. Gutierrez exercised his right to a jury trial.

At trial, Mr. Gutierrez no longer denied having sexual intercourse with the victim. Instead, he raised a defense of consent and his strategy was to impeach the witnesses regarding the victim's level of intoxication. While cross-examining the emergency room nurse, defense counsel asked if there had been a toxicology screen. The nurse responded, "Most likely there would have been. I don't have results of labs for her. It would be

typical to collect that, but I don't have in these notes here medical records showing lab results." RP (Jan. 11, 2022) at 111.

Mr. Gutierrez presented testimony from several witnesses, including Tristian Hewankorn, who testified that the victim was not particularly intoxicated and that she had seemed romantically interested in Mr. Gutierrez. Mr. Gutierrez testified and claimed the victim was not intoxicated and that their encounter was consensual. In explaining the victim's interest in him, Mr. Gutierrez claimed the victim had called him several times that night.

During deliberations, the jury submitted two inquiries to the court. First, the jury asked, "Can we see the urine toxicology report that was sent to [the Sacred Heart Medical Center] lab?" Clerk's Papers (CP) at 248. Second, the jury asked, "[Are] there phone records from [Mr. Gutierrez's] phone indicating that calls were received from [the victim's] phone the date of the incident?" *Id.* at 249. With the agreement of the prosecutor and defense counsel, the trial court answered both inquiries by directing the jury to review the evidence that had been submitted during trial.

The jury returned a guilty verdict. The trial court imposed a standard range sentence. Mr. Gutierrez timely appealed his conviction.

ANALYSIS

*Sufficiency of the evidence*

In a criminal case, the State must prove every element of a charged offense beyond a reasonable doubt. *See State v. Chacon*, 192 Wn.2d 545, 549, 431 P.3d 477 (2018). When faced with a sufficiency challenge, we view the evidence and all reasonable inferences flowing therefrom in the light most favorable to the State, and then ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

To convict Mr. Gutierrez of second degree rape, the State was required to prove that (1) he engaged in sexual intercourse with the victim and (2) the intercourse "occurred when [the victim] was incapable of consent by reason of being mentally incapacitated." CP at 241. Only the second of these elements was disputed at trial.

Contrary to Mr. Gutierrez's argument on appeal, the State's evidence was more than sufficient to prove incapacitation. The victim's best friend testified that the victim was "very intoxicated" on the night of the rape. RP (Jan. 11, 2022) at 46; *see also id.* at 54 (Best friend's testimony: "[The victim] was really drunk. She kept asking what's going on."). The best friend also testified that the victim was so inebriated that she was incapable of supporting her upper body, so Mr. Gutierrez was propping her up by her

shoulders as he raped her. The victim herself testified that her memory of the rape was a blur and she had no idea what was going on due to her level of intoxication.

The testimony amply supports a conclusion the victim was mentally incapacitated at the time of the rape. Mr. Gutierrez claims the victim and her best friend were not credible, but it is not the province of this court to assess the persuasiveness of trial testimony. *See State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) ("Credibility determinations are for the trier of fact and are not subject to review."). Mr. Gutierrez's challenge to the sufficiency of the evidence is without merit.

## *Withholding of exculpatory evidence*

Under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the State has an "affirmative duty to disclose evidence favorable to a defendant." *Kyles v. Whitley*, 514 U.S. 419, 432, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). We review *Brady* challenges de novo. *State v. Davila*, 184 Wn.2d 55, 74-75, 357 P.3d 636 (2015). To establish a *Brady* violation, a defendant must establish the evidence (1) is favorable to the accused because it is exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) is material. *Id.* at 69. Where a defendant fails to establish any one of those three components, the *Brady* claim necessarily fails. *State v. Sublett*,

156 Wn. App. 160, 200-01, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d 58, 292 P.3d 715 (2012) (plurality opinion).

Mr. Gutierrez claims the State violated its obligations under *Brady* because it did not produce the victim's toxicology report. This claim was not raised during trial. The record is therefore silent as to whether a toxicology report actually exists, whether the report was suppressed by the State, and whether the report contained information that might have been exculpatory or impeaching. Given these circumstances, Mr. Gutierrez cannot satisfy the elements of a *Brady* claim. *See State v. Lazcano*, 188 Wn. App. 338, 357, 354 P.3d 233 (2015) (holding a purported constitutional error is not "manifest," and thus reviewable for the first time on direct appeal, if "the facts necessary to adjudicate the claimed error" are not "in the record on appeal") (citing RAP 2.5(a)(3)). If Mr. Gutierrez has evidence outside the current record that could support a *Brady* claim, his remedy is to raise a challenge in a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

*Assistance of counsel*

Criminal defendants are guaranteed effective assistance of counsel by the state and federal constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To succeed on an ineffective assistance claim, a defendant must show (1) trial counsel's performance

was objectively deficient and (2) prejudice. *McFarland*, 127 Wn.2d at 334-35. Failure to meet either prong is dispositive. *State v. Berg*, 147 Wn. App. 923, 937, 198 P.3d 529 (2008).

Mr. Gutierrez argues his trial counsel performed deficiently by failing to subpoena cell phone records. This claim fails because Mr. Gutierrez cannot show prejudice on the current record, which does not include any cell phone records. Thus, we cannot say whether the records would have been helpful to Mr. Gutierrez. Again, if Mr. Gutierrez obtains evidence regarding the cell phone records outside the record on review that reveal them to be exculpatory, his remedy is to raise a challenge in a personal restraint petition. *See McFarland*, 127 Wn.2d at 338.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.                        Fearing, J.