# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  59665-2-II |
| NEIL ALLEN ALWAY, | UNPUBLISHED OPINION |
| Petitioner. | |

PRICE, J. — Neil A. Alway filed a timely personal restraint petition (PRP),[1] in which he challenges his convictions for one count first degree murder, two counts first degree kidnapping, and two counts first degree robbery, each with firearm enhancements.

In his PRP, Alway argues five grounds: (1) that he received ineffective assistance of counsel due to his counsel's failure to investigate critical evidence in preparation for his defense, (2) that insufficient evidence supports his first degree murder conviction based on felony murder, (3) that his prior conviction for minor possession of a controlled substance is unconstitutional and should not be listed on his judgment and sentence, (4) that his prior convictions for unlawful possession of a firearm (UPFA) are unconstitutional and led to error in his offender score, and (5) that the jury was improperly instructed.  We deny Alway's PRP.

---

[1] Petitioners must bring a PRP within one year from the date their judgment and sentence becomes final.  RCW 10.73.090(1).  Alway's judgment and sentence became final on June 5, 2023, the date the mandate was filed in his direct appeal.  Mandate, *State v. Alway*, No. 55793-2-II (Wash. Ct. App. June 5, 2023); RCW 10.73.090(3)(b).  Alway filed this PRP on June 5, 2024, exactly one year after this date.

No. 59665-2-II

PRELIMINARY ISSUE REGARDING SUPPLEMENTAL PETITION

In September 2024, several months after Alway's timely PRP, appointed counsel filed a supplemental brief. In this supplemental brief (filed after the one-year time limit), counsel supported some of the grounds argued in Alway's initial PRP, but counsel also raised two new grounds for relief—double jeopardy and issues related to the Victim Penalty Assessment (VPA). For these two new grounds, the briefing is treated as a supplemental petition subject to the time bar. *See*, *e.g.*, *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 139-44, 196 P.3d 672 (2008); *In re Pers. Restraint of Bromley*, No. 57804-2-II, slip op. at 4 (Wash. Ct. App. Dec. 24, 2024) (unpublished)[2] (when appointed counsel files a supplemental brief that raises new claims, the new claims are subject to the time bar based on the timing of the supplemental brief, not the initial petition). If a petition raises claims that are both timely and untimely under RCW 10.73.100, then the petition is mixed and must be dismissed. *In re Pers. Restraint of Young*, 21 Wn. App. 2d 826, 830, 508 P.3d 687, *review denied*, 199 Wn.2d 1030 (2022), *see Bromley*, No. 57804-2-II, slip op. at 6-7 (every new claim raised in the supplemental brief must fall under an exception to the time bar, otherwise the mixed petition rule applies and the supplemental claims must be dismissed). While the double jeopardy ground falls under an exception to the time-bar, the VPA ground does

_____

[2] https://www.courts.wa.gov/opinions/pdf/D2%2057804-2-II%20Unpublished%20Opinion.pdf

2

not. *See* RCW 10.73.100(1)-(7). Thus, appointed counsel's supplemental petition is mixed, and accordingly, we do not consider either double jeopardy or issues related to the VPA.[3]

FACTS

I. BACKGROUND

In mid-April 2017, Raymond Brandon and his then girlfriend, Allison Fields, were living in a car that belonged to Cheryl Penticoff. *State v. Alway*, No. 55793-2-II, slip op. at 2 (Wash. Ct. App. Jan. 31, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2055793-2-II%20Unpublished%20Opinion.pdf.[4] Alway was a friend of Penticoff, so when she said she wanted the car returned, Alway agreed to help her get it back. *Id.*

Alway was part of a plan to recover the car along with other friends, Ashley Barry, John West, and Ashley Wideman. *Id.* The plan began with the group gathering at Traci Mendez's house on the morning of April 20, where Brandon and Fields were expected to show up with Penticoff's car. *Id.* Alway was armed with a .40 caliber Smith & Wesson handgun, and West was armed with a wooden bat. *Id.*

---

[3] Although counsel's supplemental petition is mixed, Alway's timely claims made in his initial PRP are not subject to the mixed petition rule. *In re Pers. Restraint of Ramsey*, 35 Wn. App. 2d 534, 540, 576 P.3d 597 (2025) (holding that even when an untimely supplemental petition is dismissed as mixed, the court still considers timely claims made in an initial petition). Thus, we will consider the claims raised in Alway's initial PRP.

Further, to the extent that counsel's supplemental brief appropriately argues the claims made in Alway's initial PRP with additional arguments and legal authorities, we will consider them. RAP 16.10(c) (A brief in support of a timely petition need not be filed with the petition, but "at any stage of the consideration of the petition.").

[4] For these facts, we largely refer to this court's recitation from the direct appeal.

When Brandon and Fields arrived at Mendez's home, Alway and West ultimately stripped Brandon of his clothes (including a black hoodie) and forced him outside at gunpoint to a shed in the backyard where Alway shot and killed him. *Id.* at 2-3. After the shooting, Alway found Penticoff's car keys in Brandon's black hoodie and used the keys to drive away from Mendez's property (with the black hoodie in his possession). *Id.* at 2-3. Fields eventually escaped from the group later in the day. *Id.* at 3.

Five days later, on April 25, Alway was arrested for an unrelated crime of driving a stolen vehicle. *Id.* at 3. At the time of the arrest, Alway was in possession of the Smith & Wesson handgun and wearing Brandon's black hoodie. *Id.*

On April 27, law enforcement executed a search warrant for Mendez's home and found Brandon's body in the shed. *Id.* Alway, who was still in custody, was questioned about Brandon's murder. *Id.* Although Alway admitted to being at Mendez's home on the day of the attack, he maintained that Brandon was still alive when he left. *Id.*

The State charged Alway, West, Wideman, and Barry with various crimes related to the murder. *Id.* In its third amended information, the State charged Alway with six offenses: one count of first degree murder, based on both premeditation and felony murder; one count of second degree murder; two counts of first degree kidnapping; and two counts of first degree robbery. All of the counts included firearm sentencing enhancements.

II. TRIAL

Alway's case proceeded to a lengthy jury trial with over 500 exhibits and more than 50 witnesses.[5]

A. FIELDS' TESTIMONY

Fields testified for the State consistently with the above facts. Fields explained how Alway held her and Brandon at gunpoint with a black semi-automatic handgun (the Smith & Wesson .40 caliber). Brandon, who had a different, "black and brown" gun in his possession, was forced by Alway to take off his black hoodie and relinquish his gun. 1 Verbatim Rep. of Proc. (VRP) at 443, 446; 4 VRP at 1606. Alway, armed with the Smith & Wesson, and West, now armed with the black and brown gun, took Brandon outside. Fields testified that she heard screaming. Then she heard a gunshot, followed by silence. Fields testified that after the gunshot, Alway and West frantically returned inside, "panic[-]stricken." 1 VRP at 450. They found Brandon's black hoodie and, in the pocket, discovered the keys to Penticoff's car, which Alway used to drive away.

During cross-examination, defense counsel introduced various messages Fields sent to other acquaintances around the time of the incident. In some of the messages, Fields pretends to be Brandon and in others she implies that Brandon is still alive. In one conversation, Fields appears to admit to seeing the murder—she says that Brandon was dead, that she watched it happen, and that she could not say where the body is because "it's hard to explain." 2 VRP at 552. Defense

---

[5] The State entered into cooperation agreements with West, Wideman, and Mendez for their testimony. The record does not show that Fields also had a cooperation agreement with the State.

also introduced an exchange between Fields and an individual she called "Trouble." Fields confirmed that Trouble's first name was actually Steve.[6]

### B. Expert Testimony Regarding Ballistics Analysis and DNA Testing

The State presented ballistics evidence to establish that the Smith & Wesson gun was the murder weapon. The State's expert testified to being "100 [percent] positive" that the bullet found in Brandon's body and the shell casing found inside the shed came from the same Smith & Wesson handgun found in Alway's possession at the time of his arrest. 4 VRP at 1750. She further testified that she could confidently render this conclusion without needing to analyze alternatives.[7] The black and brown gun was apparently not tested as a potential murder weapon.

The State then presented DNA analysis of several items associated with the crime, including the Smith & Wesson and the black and brown gun. On the Smith & Wesson, the State's DNA analyst testified that both Alway's and Fields' DNA were present. On the black and brown gun, the State's expert testified that West's, Brandon's, and Fields' DNA were present.

---

[6] Until this point, defense counsel apparently did not know Trouble's actual name. Counsel told the trial court that he would be working with his investigator to find "Trouble" and attempt to call him as a witness for the defense. He explained that the State had been trying to figure out who "Trouble" was but without a real name, it had not been successful.

[7] Prior to trial, defense counsel moved for an order to allow a different ballistics expert, Raymond Grimsbo, to conduct independent retesting of the murder weapon. The judge granted the motion and ordered the defense to present a plan to ensure chain of custody. Defense indicated that they intended to use Grimsbo as a rebuttal witness to the State's forensic experts. But Grimsbo was never called as a witness.

III. VERDICT, SENTENCING, AND APPEAL

The jury was instructed on each of the counts; for first degree murder, the jury was instructed on two different bases—premeditation and felony murder. Felony murder was premised on the death occurring in the course of the robbery.

The jury found Alway guilty of one count of first degree murder and one count of second degree murder, two counts of first degree kidnapping, and two counts of first degree robbery. All of the counts included firearm enhancements.

Alway's criminal history declaration showed two prior convictions for unlawful possession of a firearm, one of which added a point to his offender score. The declaration also listed, among other crimes, a 1998 conviction for a minor in possession of a controlled substance. This conviction did not contribute to his offender score.

After vacating the second degree murder count on double jeopardy grounds, the trial court sentenced Alway to 850 months total confinement.

Alway filed a direct appeal with this court, raising several arguments for review. *Alway*, No. 55793-2-II, slip op. at 1. This court affirmed his convictions. *Id.* at 1, 22.

ANALYSIS

Alway raises five grounds in his PRP. He argues that (1) he received ineffective assistance of counsel when defense counsel failed to investigate critical evidence in preparation for his defense, (2) insufficient evidence supports his conviction for felony murder, (3) his prior conviction for minor possession of a controlled substance is unconstitutional and should not be listed on his judgment and sentence, (4) his prior UPFA convictions are unconstitutional and, thus,

7

led to error in calculating his offender score, and (5) the jury was improperly instructed on issues related to his second degree murder conviction. We deny Alway's PRP.

I. PRP PRINCIPLES

A person who is unlawfully restrained may be granted relief through a PRP. RAP 16.4(a). "Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011).

To obtain relief in a PRP, the petitioner must establish, by a preponderance of the evidence, either a constitutional error that has resulted in actual and substantial prejudice or a nonconstitutional error that constitutes a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016), *review denied*, 188 Wn.2d 1008 (2017).

To meet the high standard required in a PRP, the petitioner bears the evidentiary burden to "state with particularity facts that, if proven, would entitle the petitioner to relief." *In re Pers. Restraint of Perry*, 29 Wn. App. 2d 734, 752, 542 P.3d 168 (2024). "Bald assertions and conclusory allegations are not sufficient." *Id.* at 753. As are "[a]rguments made only in broad, general terms . . . ." *Id.*

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Alway alleges that he received ineffective assistance of counsel when his counsel failed to investigate critical evidence in preparation for his defense. Alway also requests a reference hearing.

Both the United States Constitution and the Washington Constitution guarantee the right to effective assistance of counsel. U.S. Const. amend. VI; Wash. Const. art. I, § 22. In the context of a PRP, a petitioner who demonstrates ineffective assistance of counsel necessarily shows actual and substantial prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

To prevail on an ineffective assistance of counsel claim, the petitioner must show (1) that counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). An ineffective assistance of counsel claim fails if the petitioner fails to satisfy either prong of the inquiry. *Crace*, 174 Wn.2d at 847. We need not consider both prongs if the petitioner fails to satisfy one. *Id.*

"Performance is 'deficient' if 'it [falls] below an objective standard of reasonableness.' " *Bertrand*, 3 Wn.3d at 128 (alteration in original) (quoting *State v. McFarland*, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995)). We engage in a strong presumption that counsel's performance was reasonable. *Id.* "Defense counsel's performance is not deficient if it is a 'legitimate trial strategy or tactic[].' " *Id.* (alternation in original) (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). The relevant question then becomes whether defense counsel's strategic choices were reasonable. *State v. Vazquez*, 198 Wn.2d 239, 255, 494 P.3d 424 (2021). A petitioner can show counsel's strategic choices are unreasonable and rebut the strong presumption of reasonableness by establishing that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

To prove ineffective assistance of counsel in the context of a PRP, a petitioner is still required to meet their evidentiary burden to state with particularity facts that, if proven, would

entitle the petitioner to relief. *See Perry*, 29 Wn. App. 2d at 752. "[A] mere statement of evidence that the petitioner *believes* will prove his factual allegations is not sufficient." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). For arguments that pertain to "matters outside the existing record, the petitioner must demonstrate that [they] ha[ve] competent, admissible evidence to establish the facts that entitle [them] to relief." *Id.* For evidence that is based on other people's knowledge, petitioners "may not simply state what [they] think[] those others would say, but must present their affidavits or other corroborative evidence." *Id.* Any corroboration must be more than speculative. *Id.*

Here, Alway argues that his counsel was deficient because he failed to investigate critical evidence relevant to the defense. Alway focuses on Fields and argues that his counsel failed to investigate her as an alternate suspect. He argues that the DNA evidence connected her to the black and brown gun, which Alway contends is the actual murder weapon. Alway also references Fields' inconsistent messaging after the murders in which, among other things, she portrayed herself as Brandon and implied Brandon was still alive. Alway further argues that defense counsel should have "scoured" Fields' social media accounts for a confession. PRP at 16. He goes on to allege that Fields was incentivized by an immunity deal with the State and that his counsel should have more fully impeached her. PRP at 14 ("An innocent victim does not ask for immunity.").

Alway also argues that his counsel was deficient for failing to find and call potential witnesses, including "Trouble," who could have "exculpated" him. PRP at 15. And he argues that if defense counsel had investigated the case properly, counsel would have conducted a ballistics analysis of the black and brown gun.

We are unpersuaded. Alway provides no evidence (affidavits, declarations, or otherwise) to support his allegations. Absent corroborating evidence to support his argument, Alway's conclusory statements alleging defense counsel's deficient performance are insufficient to meet his evidentiary burden. *See Perry*, 29 Wn. App. 2d at 752 (explaining that the petitioner must state with particularity facts that, if proven, would entitle the petitioner to relief to meet their burden in a PRP). Alway speculates, but he provides no actual evidence to substantiate his allegations of an incomplete investigation by his counsel. While it is true that Fields may have sent some inconsistent messages to people after the murder, our record is devoid about what counsel did or did not do to investigate Alway's case generally or Fields specifically; and Alway provides no additional declarations or other competent admissible evidence.[8] Merely suggesting that the evidence could be obtained in a reference hearing is not sufficient. *In re Pers. Restraint of Rice*, 118 Wn.2d at 886 ("[T]he purpose of a reference hearing is to resolve genuine factual disputes, not to determine whether the petitioner actually has evidence to support his allegations.").

Without additional evidence relevant to defense counsel's performance, Alway cannot overcome the strong presumption that counsel's performance was reasonable. *Reichenbach*, 153 Wn.2d at 130. Having failed to meet his evidentiary burden, this ground for relief fails.

III. REMAINING PRP GROUNDS

Although he primarily focuses on ineffective assistance of counsel, Alway raises four more grounds for relief: (1) sufficiency of the evidence, (2) inclusion in his criminal history of a conviction for a minor in possession of a controlled substance, (3) inclusion of a conviction for

---

[8] For example, Alway neither supplies, nor identifies in the record, an immunity agreement between the State and Fields, and we have found none.

unlawful possession of a firearm in his offender score, and (4) improper jury instructions related to second degree murder. None has merit.

### A. SUFFICIENCY OF THE EVIDENCE—FELONY MURDER

When reviewing the sufficiency of the evidence, we determine " 'whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.' " *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In conducting this review, we draw all reasonable inferences from the evidence in favor of the State and against the defendant. *Id.* For jury trials, we apply a standard of review that is highly deferential to the jury's decision. *Id.*

To convict Alway of first degree murder based on felony murder, the State had to prove that Alway caused Brandon's death in the course, furtherance, or immediate flight from the attempt or commission of first or second degree robbery. RCW 9A.32.030(1)(c). To show that such a robbery occurred, the State had to prove that Alway took personal property from Brandon and Fields against their will using force, violence, or fear of injury. RCW 9A.56.190. Using a deadly weapon in the commission of or in the immediate flight from a robbery makes it a first degree robbery. RCW 9A.56.200(1)(a)(i).

Alway argues that there is insufficient evidence to prove that Brandon's death occurred in the course, furtherance, or immediate flight from the robbery. He alleges that the robbery and the murder took place at entirely different times and locations. According to Alway, "[t]here was no flight what-so-ever" between the robbery and the murder to allow a jury to find felony murder.

PRP at 10. He alleges that the participants in the robbery had moved to an "entirely" different "building a ways away" to commit the murder. PRP at 10.

We disagree. Alway exaggerates the separation of the murder from the robberies. The testimony established that Alway was armed when he took personal property from Brandon, including Brandon's black hoodie and Brandon's black and brown gun, before he forced Brandon to the shed where he was killed. Moreover, there was testimony that after the gunshot, Alway returned inside and found Penticoff's car keys in Brandon's black hoodie and used the keys to drive away. 1 VRP at 450. Construing all inferences in the light most favorable to the State, this evidence all suggests that Brandon was shot by Alway in the course of the robbery. Thus, sufficient evidence supports Alway's first degree murder conviction based on felony murder.

B. MINOR IN POSSESSION OF A CONTROLLED SUBSTANCE

Next, Alway argues that his minor in possession of a controlled substance conviction was improperly included in his judgment and sentence because the conviction is unconstitutional under *State v. Blake*. 197 Wn.2d 170, 481 P.3d 521 (2021). Alway's claim fails for two reasons. First, *State v. Blake* did not involve the same statute and Alway provides no explanation of how *Blake* applies. *See Blake*, 197 Wn.2d at 182. Second, because Alway's conviction for a minor in possession was not included as part of his offender score, Alway cannot show that any actual and substantial prejudice resulted from its inclusion in his criminal history.

C. UNLAWFUL POSSESSION OF A FIREARM

Alway next claims that his UPFA convictions are unconstitutional and, therefore, should not have been included in his offender score. He supports his claim by merely citing, without

explanation of their application, two cases—*United States v. Duarte*[9] and *Chambers v. United States*.[10] However, both *Duarte* and *Chambers* were later vacated; thus, neither have authority and as such do not invalidate Alway's prior UPFA convictions. This ground fails.

    D. JURY INSTRUCTIONS

Finally, with little explanation, Alway argues that the jury was improperly instructed on the requisite elements to convict him of second degree murder, relieving the State of their burden of proof. Alway refers to jury instruction 21, the to-convict instruction for first degree murder; however, based on his citation to the record and the content of his claim, he seems to be referring to the concept of recklessness found in jury instructions 23 and 27.[11] Recklessness, however, is a concept that was only relevant to second degree assault, which, in turn, was only relevant to the second degree murder charge. But because the second degree murder charge was vacated by the trial court on double jeopardy grounds, any alleged error in these instructions could not have impacted his sentence. Therefore, this ground for relief fails.

CONCLUSION

We deny Alway's PRP.

---

[9] *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024) (vacated by *United States v. Duarte*, 108 F.4th 786 (9th Cir. 2024).

[10] *Chambers v. United States*, 47 F.3d 1015 (9th Cir. 1995) (vacated by *Chambers v. United States*, 47 F.3d 1015 (9th Cir. 1995)).

[11] Alway refers to instruction 21, but he directly quotes the language from instruction 27 (pertaining to recklessness) and cites to the trial transcript where the trial court recited the language of instruction 27 (VRP at 2148).

No. 59665-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

GLASGOW, J.